The next case on for argument is J.D. v. The New York City Department of Education. Thank you. There you go. There you go. Hold on just a second, Ms. Otto. Let us let the doors close back there and then we can give you our full attention. There we go. Good morning. May it please the court, my name is Caroline Heller and I represent J.D., the mother of A.P., the student at issue in this case. This is a case about a bright young man who wanted to learn to read. This is a case about a mother who gave the Department of Education nine years to educate her son, nine years to teach him to read, and a case about the Department of Education that failed to do so. This is also a case about a district court that bent over backwards to defend an indefensible state review officer decision. And the reason the state review officer decision was indefensible is because it was not supported by the evidence in the record. And in addition, the state review officer failed to grapple with the evidence in the record that demonstrated the educational program recommended for A.P. was insufficient to assist him in learning how to read, make progress in writing, and in math. May I ask you a question about reading, which seems to me is at the very center of this? And is it the appellant's position that learning to read is a predicate to receiving or to any fate or IEP, that that's an absolute necessity? For this student, yes, it was, because he was capable of learning to read. So we weren't dealing with a student for whom that was something that he was unable to do. And indeed, the only evaluation in the record, the only evaluation the Department of Education had, because they chose not to do their own, talked about how A.P. had the ability, it said what the Department of Education needed to do, and it also said that until he learns to read, he will not be able to learn how to write, make progress in math, or accomplish any other skills. The IDEA is very clear about what it's designed to accomplish. It's designed, quote, to meet, I'm sorry, in order to provide a free appropriate public education. The Department of Education is obligated to provide a program that, quote, is designed to meet their unique needs and prepare them for further education, employment, and independent living. Or is reasonably calculated to enable the child to receive educational benefits. That is correct. And recently, OSEP, I apologize, I'm looking for the Office of Special Education, discussed what it means to provide a FAPE. And they discussed how the IDEA's goal is for every child to reach grade level. And that's not, some children aren't able to do that, but the Department of Education is obligated to at least try to provide a program that can do that. And in this case, they had a roadmap of what didn't work for AP. And that was a self-contained classroom, a 12-to-1 classroom, which they had tried for three years. And AP didn't learn to read. And that self-contained classroom is 12 special education students and one special education teacher. So it's small. But it wasn't enough. They also knew, after six years of failed reading instruction in a method called Wilson, for 30 minutes, two times a week, in a group of three to five, that that extra support didn't work. And then, after fifth grade, they had a roadmap for what would work, an evaluation. And instead, they sent AP back to a 12-to-1 in sixth grade. Now, that's not the year at issue, but that's also important. Because in sixth grade, sent back to the same program that wasn't working, we started to lose AP. A kind, bright, a boy who wanted to learn, we were losing him. He didn't want to go to school. He was scared to go outside. He was a 12-year-old non-reader in a middle school where that school, this testimony on the record, had never addressed the needs of a non-reader. Articulate for me, from the point in time, please, when the IEP, that is, that issue here, was articulated, what are the problems with that? Sure. So, after the middle of sixth grade, the mother sends him to the Sterling School that implements the program recommended in the evaluation. It's a little bit more intense, but nevertheless, it basically follows the guidelines. And in four months... And the DOE reimburses for that semester, the second semester of that year. Yes. They paid for Sterling. So, then we get up to the 2011 IEP. And at that time, they know, this kid is now reading. They jump-started his reading at Sterling using a program akin to the one in the evaluation, one that was never offered by the DOE. So, they know what's working. They know what doesn't work. And instead of implementing a program designed to meet his unique educational needs, what do they do? They take it away from him. They say, we're going to send you back to that self-contained classroom. What did the record demonstrate that the SETS instruction that was added to the 12-to-1 classroom would not be sufficient? The Department of Education's own witness, Ms. Peralta, a SETS instructor, testified that one period of SETS was not enough for this child. So, even if you... Let's set aside all of the parents' arguments that SETS are not the equivalent of the evaluation. The Department of Education's own witness said this kid needed more. He needed two times. And she uses the word needed. It wasn't the gold standard. She said he needed two times a day. So, it's the Department of Education's own witness that, at the very least, says the SETS... You have a record reference on that, just for... I do, and it's 205. I'm sorry. It's a confidential appendix, 205, I believe, lines 2 through 17. 205 is close enough, but thank you. Yes. So, that's the first reason. The second reason... And, by the way, this testimony is unrebutted. The Department of Education never criticized her testimony, didn't re-examine her on it, didn't bring another witness. So, then let's move to the parents' testimony. Folks who worked with AP testified that it wasn't enough, because special education teacher support services is simply one special education teacher and eight general education students and special ed students for 45 minutes a day. It's not the intense, specialized, long-duration instruction that the evaluation said he needed that was working at Sterling. It's basically saying, we're going to put you in a smaller classroom, so it's smaller than the 12 to 1, but it's still not small enough, and it's not with a reading instructor, and it's not frequent enough. We weren't talking... Not frequent enough because it's one time, not two. Exactly. And I see my time is almost up, and I've reserved three minutes. Thank you. Thanks, Ms. Hellman. Mr. McCann. Yes. May it please the Court. Max McCann, on behalf of AP LEs. The impartial hearing officer, the state review officer, and the district court all agreed that the department offered a free and appropriate public education, and thus that the appellant is not entitled to tuition reimbursement, and here's why. The education program that the department offered included additional services beyond the years for which the appellant is focusing. The appellant mentioned in our very first sentence that for nine years the child had not learned to read. That's a distraction. That's not the issue here. The issue here... I think we're all focused, and Ms. Nelson certainly was in response to my last set of questions. I think we're all focused on, and I want to get the year right, but the 2011... That's correct, 2011-2012, Your Honor. Yeah, the 2011-2012 IEP. That's what we up here need to evaluate again, and that's what the whole record, the hearing officers and SRO, evaluate against what was being offered at Sterling. Absolutely. That's correct. So let's focus on that last IEP. Yes, and as we've mentioned, that education program included additional reading remediation. SETS is reading remediation. It's clear on page 580 of the record that that's the reason SETS was included. SETS in this case would not have been eight students, as the appellant just mentioned. It would have been a small group or one-on-one. That's what Ms. Peralta testified to. Ms. Peralta did say that she would have performed more than the one period of SETS that was called for in the education program, but she did not say that only one period would have been insufficient to meet the obligations under the Act. And I haven't gone back to look at that page of the record, and obviously we'll do that, but I think Ms. Heller, sorry if I called her Ms. Nelson, but Ms. Heller said that the DOE witness said that he needed at least more than one. That's correct, but needed in order to, what, maximize the child's potential? That's not what's required under the Act. The Act, as Your Honor noted, has to be reasonably calculated to provide educational benefits. Are we permitted, as a matter of law and analysis, and I know we've, I think we have spoken on this in some prior case law, one that I may have been involved in, the name of which I don't remember, but to look at what the provider says would happen under the IEP, this is what we're going to do, this is what we would have added to it? I think there's a problem with that, is there not? I do too, Your Honor. I think the education program has to be evaluated on its face. On what the program is in writing, this is what we're going to do. Right. Even though some witness comes in and says, but we would have added more to that. That's correct, yes. All right. And we would note Ms. Peralta also testified that the program would help the child retrieving sounds and identifying symbols in words. That's concrete evidence of a material educational benefit. Lorna Matthew, the school psychologist, testified that she agreed with the education program. Ms. Acevedo, the special education teacher, testified that she agreed with the program. Even the mom's own expert, Dr. Thomas, this is the outside psychologist who signed off on the psychological evaluation, said that she agreed with the recommendations of the education program. That's page 392 of the record. She said that she would have gone further, that she would have liked for it to have gone further, but again, the act does not require every service that a loving parent or a diligent psychologist might want in order to maximize a child's potential. The education program was consistent with the evaluation because it called for the same type of instruction, multi-sensory instruction and hands-on activities that were called for in the psychological evaluation, but the department doesn't have to provide everything that's called for in the evaluation. That's clear. Instead, the department has to provide, quote, a basic floor of opportunity. That's from this court's decision in Reyes v. Department. Do you agree with Ms. Hiller that in this case that means provide adequate services so that the child can learn to read? That's an interesting question. I don't think it's clear from the case law, but assuming it is, assuming the department has to allow the child to read, we satisfy that standard here, and the child already had learned to read at the Sterling School, and so the department can promote, can develop on that progress that the child has already made. So to say that this education program wouldn't have allowed the child to learn to read, that's beyond the point of this case. One interesting note about the program that the department offered, it's developed by a committee on special education. That committee included the appellant, it included the principal of the Sterling School, and it includes a parent of another special needs child. It only includes two department witnesses. The department witnesses are actually outnumbered on that committee. So a committee, an objective committee, to use the word that the appellant echoes so often, an objective committee has determined, including the appellant, that this is the appropriate education program for the child. There's no indication of dissent in the education program, which they're free to note, that we don't agree with this. So it's clear that the department did satisfy its obligations. Let me ask you about the evidence, because what we have here, at least as I see it, and you can please rearrange my understanding of the evidence if you disagree, but we have a special education teacher who hadn't evaluated the child or met with AP and seen him in action, juxtaposed with the expert's report who obviously had a hands-on relationship with the child before making and giving the system an evaluation. Is that adequate? That's an accurate part of the record, but we're looking at the record as a whole, which also includes the testimony of Ms. Matthew, the school psychologist who had performed an observation of AP. And the committee that developed the program also included the appellant and the principal. They developed this program, and they certainly were familiar with AP and with his progress, and even the members who weren't familiar had performance evaluations that were more current than the psychological evaluation on which they could rely in developing this program. Now... Is there anything in the record that you can point to that indicates that a 90-minute program as opposed to a 45-minute program wouldn't have accomplished any more than the 45-minute program? In other words, is there expert evidence that it really wouldn't be necessary to expand the one-on-one or the one-on-three for this person? I don't think there's specific testimony one way or another on that point. And so whether... And, again, much of the testimony, for example, the evaluation itself, might say that the child needs this. The evaluation doesn't say the child needs this in order to be provided with a minimum floor of educational opportunities. So we have to keep in mind the standard of the act, but I'm not aware of specific testimony that says 45 minutes a day in connection with the speech and language therapy that the child was receiving and the one-on-one counseling sessions on a weekly basis that the child was receiving would not have... I looked back at the testimony, but probably it's most naturally going to be read, given what the SETS program is set up for it to be, needs this additional time in order to progress in reading, don't you think? That's absolutely correct. That's why SETS is provided for this child, is for reading remediation. But there's no evidence that says 45 minutes enough would not be sufficient to give the child a basic floor of education here, at least under my reading of the record. Now, the record is clear that the appellant rejected this education program based on the placement, based on the child's performance in the past, and that's not the proper consideration here. As we've discussed, we have to look at the education program that's offered, and we also can't parse between different programs like Wilson v. Wharton-Gillingham. That's not proper. It's not proper for us to substitute our judgment, even though I know Judge Garifuss is a former public school teacher. We try to defer to the experts in this case, and as Judge Garifuss mentioned in the BK decision, that deference is particularly apt when the IHO and the SRO agree. I see that my time is up, so we'll rest for a moment. And on that point, which is not to say, because it certainly is a point of contention in the matters before us, which is not to say that we are bound by those determinations. That's correct, Your Honor. The level of deference is based on the quality of those determinations. As long as they're adequately supported by the record and adequately reasoned, they're entitled to deference. Go ahead. What we have here is sort of an extreme case. The child did not read before going to Sterling, right? The child could not read. That's correct. And went to Sterling using the evaluation as a basis for the program at Sterling, and after being at Sterling could then read at a second-grade level, which is the first benchmark on the road to reading and functioning as a literate person, right? Right. That's correct. But it's important that we're not comparing the Sterling program to the department's program. It's not which one was better. It's whether the department's program would have provided educational benefits to the child. Would the IEP from 2010 have provided what was needed for this appellant to have started to read? Was that a conclusion of the Department of Education? That's not an explicit conclusion. I think it would be reasonable to concede that the prior education program did not provide enough reading remediation for the child, and that's why the education program at issue in this case is sufficient because it did include that intense reading remediation in a one-on-one or small group setting on a daily basis. Were there any environmental factors that were a part of that? Anything going on that could be found in this record as to why the 2010 IEP was not successful? Yes, Your Honor, the child's attendance, for one. The child's teacher testified that during that year the child's attendance was so spotty that the reading programs that she tried to implement could not be implemented effectively enough. So that's another reason why it's unfair to have rejected this education program in whole just based on the child's past performance. Thank you. Thank you. Ms. Heller, you've reserved three minutes for rebuttal. Yes, thank you. On that last point, the Department of Education had tried a 12-to-1 program for three years before sixth grade when there was some testimony that AP's education started to become spotty because he was a 12-year-old that couldn't read, and we were losing him. So historically, even when he was attending school to 12-to-1, he wasn't learning to read. There are a couple of items I'd like to address. But historically, he also didn't have the various components of the 2011 IEP as part of what he was experiencing. Correct, only the sets. And it was the Department of Education's burden to show that there was evidence at the IEP meeting that he could learn with only 45 minutes of special education teacher attention in a group of up to eight general education and special education students. Contrary to what the appellee states, there is testimony in the record that that's what sets is. It can be up to eight students. Ms. Peralta says so. What she speculates she would have done is completely different. So let's talk about LO for a moment. On that point, I assume that the appellant's position is we do not consider what she says she would have done above and beyond the IEP. That is correct. Because pursuant to our speculation, on the point about when the appellee said there's no evidence that the sets on the IEP would be insufficient, the evidence was out of their own witness's mouth. The evidence was also the evaluation, the only evaluation in the room at the CSE meeting that said he needed 90 minutes a day of specialized reading instruction. And LO talks about the Second Circuit's most recent decision on IDEA, talks about you have to perform an evaluation. The IDEA requires it. And the reason it's required is because that evaluation is the basis to design an appropriate educational plan. I heard the appellee talk about the gold standard. Is first grade reading level for a 12-year-old the gold standard? In order to determine what was a fate for this child, what confers an educational benefit, this Court need not look past his own IEP. The 2011 IEP expected him to take state assessments. Those are the standardized tests that general education students take. It also expected him to meet 50 percent of ELA standards for a sixth grader. That is the standard by which we determine whether or not the IEP would have conferred an educational benefit. Was there evidence in the record that sets a mere 45 minutes a day would have gotten him there? There is no evidence in the record that it would have, and the evidence in the record is that it wouldn't have. AP gave the Department of Education nine years to get this right. The fact that it made a tweak not supported by the evidence in the record and its own witness doesn't mean all of a sudden it provided this child a free, appropriate public education. Thank you very much. Thank you. Thanks to you both. Thank you. Well-reserved decision. Well argued by both. Yes, absolutely, and helpful.